Filed 9/16/20  P. v. Gales CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>QUANTRELL GALES,<br><br>    Defendant and Appellant. | A156362<br><br>(San Mateo County<br>Super. Ct. No. 18NF004938A) |

A jury convicted Quantrell Gales of battery with injury on transit personnel.  (Pen. Code,[1] § 243.3.)  The trial court sentenced Gales to 32 months in prison.  Gales appeals.  He contends the trial court erred by using "conflicting mental state instructions," and he challenges the imposition of $400 in fines and fees.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.    *The Incident at the Millbrae Station*

On April 29, 2018, Raymond R.[2] was working as a station agent at the Bay Area Rapid Transit (BART) station in Millbrae, California.  He began

---

[1] Undesignated statutory references are to the Penal Code.

[2] Pursuant to California Rules of Court, rule 8.90(b)(4), we refer to the victim by first name and last initial.

1

work at 7:30 a.m. He was wearing a blue shirt, a nametag, a picture ID that identified him as a BART agent, a sweater vest, and a BART baseball cap.

Raymond R. has been a BART station agent for 10 years. His duties include providing information to riders and tourists about how to purchase tickets, making sure the station is clean, and alerting BART police if riders require medical or police attention. He is also responsible for making sure the bathrooms are clean and, if they are not, to close them until janitorial staff can clean them.

The restrooms are in "the paid area" of the BART station, close to where Raymond R. sits in his booth. As explained by Raymond R., on the morning of April 29, "we only had one janitor come in. And he had multiple stations to clean that morning. So we knew we were going to have a problem later on in the day" and "we stopped letting people use the restrooms." The station agent on duty before Raymond R. closed the bathroom.

Around 1:00 p.m., Gales entered the BART station through the emergency exit gate, and he asked Raymond R. if he could use the restroom. At the time, Raymond R. was not in his booth. Raymond R. responded that the bathrooms were " 'unusable because they're dirty.' "

Gales became angry. Raymond R. tried—unsuccessfully—to calm him down. Raymond R. was "trying to get across to him that the bathrooms [were] dirty." Gales was "getting hostile." Gales began threatening Raymond R., who told him, " 'You need to stop, or I'm going to have to give BART police a call.' " Raymond R. also stated, " 'I need for you to stay here so you can explain to them as well.' "

Raymond R. went inside his booth and called BART police. Dispatch asked if the door to the booth was open and told him to close it. Inside the booth, the telephone was next to the door.

As Raymond R. was putting down the telephone, Gales struck him. Using a closed fist, Gales struck the victim on the upper part of his jaw. The blow also struck his neck. Raymond R. was stunned. According to Raymond R., it was "a good solid hit" and it "hurt like heck." He described it as "a sucker-punch" because Raymond R. was not looking at Gales, and Gales "blind sided" him. Gales struck the victim one time.

Raymond R. was angry and he couldn't understand why Gales struck him. He did not lose consciousness and remained on his feet. He grabbed the telephone and told dispatch he had been struck. Dispatch stated BART police would respond.

Gales wanted the station agent to come out of the booth to fight him. Gales stated, " 'Come on. Let's do it.' " Raymond R. was "shocked by the whole situation." He walked out of the booth to engage with Gales, but a bystander intervened. Raymond R. did not touch or get physical with Gales. His supervisor was nearby, and she pushed Raymond R. into the booth and closed the door. Gales remained in the area of the booth, and then went downstairs to a train platform.

The victim and his supervisor placed a hold on trains at the station so that Gales could not board a train to leave. BART police arrived and apprehended Gales. Raymond R. identified Gales to BART police.

Raymond R. was in pain and his neck hurt. His supervisor put ice on his neck, which was swelling up and bruised. Paramedics arrived and examined Raymond R.'s jaw and his neck. They recommended that he go to a hospital for an X-ray.

Raymond R.'s supervisor drove him to a Kaiser facility, where it was determined he did not suffer a fracture. However, the bruising on his neck

and jaw lasted about seven weeks. The bruising was "tender to the touch" for about 10 days. The victim missed five days of work.

Raymond R.'s supervisor, who was also working at the Millbrae station, saw Gales hit him. When he was struck, Raymond R. was in the station agent booth on the telephone. Gales delivered one blow and it struck the victim on the left side of his face.

II.  *Complaint, Information, Trial, and Sentence*

On May 1, 2018, a complaint was filed against Gales charging him with one felony count of battery with injury on transit personnel. (§ 243.3.) After a preliminary hearing, the court held Gales to answer to the charge. On May 25, 2018, the information was filed charging Gales with this crime and adding that Gales had a prior strike conviction. (§§ 667, subds. (b)–(j); 1170.12.)

Gales's jury trial began on October 24, 2018. The jury heard testimony from three prosecution witnesses—the victim, a police officer, and the victim's supervisor. On October 29, 2018, the jury found Gales guilty of the crime of battery against a station agent causing injury. (§ 243.3.) The court found true the allegation that Gales suffered a prior strike conviction.

On December 4, 2018, the court sentenced Gales to the low term of 16 months in prison, which was doubled by virtue of the prior strike conviction, for a total of 32 months in prison. The court ordered Gales to pay a restitution fine of $330 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a conviction assessment of $30 (Gov. Code, § 70373). Gales timely filed a notice of appeal.

4

DISCUSSION

On appeal, Gales claims the court erred by instructing the jury with "the general intent definition contained in CALCRIM No. 250," and Gales also challenges the fines and assessments. We affirm.

I.      *The Charged Crime and the Jury Instructions*

Gales was charged with one count of battery with injury on transit personnel. Section 243.3 provides in part that "[w]hen a battery is committed . . . against the person of a station agent or ticket agent for the entity providing the transportation, and the person who commits the offense knows or reasonably should know that the victim, in the case of an . . . agent, is engaged in the performance of his or her duties," and if "an injury is inflicted on that victim, the offense shall be punished by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year or in the state prison for 16 months, or two or three years, or by both that fine and imprisonment."

Here, the court instructed the jury on the elements of this crime in accordance with CALCRIM No. 948. They were told that the People had to prove: (1) Raymond R. was a station agent of BART; (2) Gales willfully and unlawfully touched Raymond R. in a harmful or offensive manner; (3) when Gales acted, Raymond R. was performing his duties as a station agent of BART; (4) when Gales acted, he knew, or reasonably should have known that Raymond R. was a station agent of BART performing his duties; and (5) Raymond R. suffered an injury as a result of the force used.

Earlier, the court instructed the jury regarding "general principles of law that are read in most cases," including the instruction for general intent crimes. Based on CALCRIM No. 250, the jury was told that the crime charged in this case requires "proof of the union, or joint operation, of act and

5

wrongful intent. [¶] For you to find a person guilty of the crime charged or any lesser included offense, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

## II.     *The Error, If Any, Was Harmless*

In arguing the court committed instructional error, Gales relies on the bench notes to CALCRIM No. 250, which state the instruction "**must not** be used if the crime requires a specific mental state, such as knowledge . . . , even if the crime is classified as a general intent offense." Here, the charged crime has a knowledge component: the People had to prove Gales knew or reasonably should have known that Raymond R. was a BART station agent performing his duties. Assuming, without deciding, that the court should not have used CALCRIM No. 250, we find the error was harmless. (*Chapman v. Cal.* (1967) 386 U.S. 18, 24.)

In *People v. Gutierrez* (2002) 28 Cal.4th 1083, our high court determined that the error of providing an instruction on general criminal intent "was clearly harmless beyond a reasonable doubt" because there "was evidence that defendant harbored the requisite specific intent." (*Id.* at p. 1154.) Similarly here, applying the stringent federal harmless error standard from *Chapman v. Cal.*, *supra*, 386 U.S. at page 24, there is overwhelming evidence that Gales knew or should have known that Raymond R. was a BART station agent performing his duties.

On the day of the incident, Raymond R. was wearing the typical attire of a BART employee, including a blue shirt, a nametag, a picture ID, and a BART baseball cap. After entering the Millbrae BART station, Gales

6

approached Raymond R. to ask if he could use the restroom, which indicates Gales understood Raymond R. was responsible for access to it. And most importantly, when Gales struck Raymond R., the victim was in the station agent booth calling BART police. Based on this evidence, no juror could reasonably doubt that Gales knew or should have known that Raymond R. was a BART station agent performing his duties.

In arguing otherwise, Gales claims the knowledge element of the crime was "hotly contested" because it was not clear where Raymond R. was located when he first encountered Gales, there was no testimony that the victim had the authority to detain riders, and the jury's questions regarding Raymond R.'s duties show "the case was close."

We are not persuaded. During deliberations, the jurors asked for the transcript of Raymond R.'s testimony regarding his duties, they requested the judge's definition of "performing his duties," and they asked if they could consider whether Raymond R. was performing his duties well. In response, the court referred the jury back to the instruction, and indicated that whether Raymond R. was performing his duties well was not part of the definition of duties. Ten minutes after receiving a read back of Raymond R.'s testimony regarding his duties, the jury informed the court they had reached a verdict.

The jury's deliberations regarding Raymond R.'s duties do not call into question or undermine the overwhelming evidence supporting the conclusion that Gales knew or should have known Raymond R. was a BART station agent performing his duties when Gales struck him. Any error instructing the jury on general intent in accordance with CALCRIM No. 250 was harmless beyond a reasonable doubt. (*People v. Gutierrez, supra,* 28 Cal.4th at p. 1154.)

III.    *The Restitution Fine and Court Assessments*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), and *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844 (*Kopp*), Gales challenges the court's imposition of a restitution fine and assessments.  He argues imposing the fees without conducting an ability-to-pay hearing violates his right to due process, and he requests we "reverse and vacate the assessments."  Alternatively, he requests a remand for a hearing on his ability to pay the restitution fine, which he claims either violates his right to due process or constitutes an excessive fine under the Eighth Amendment.  We conclude Gales's challenge to the fine and fees is forfeited.

In *Dueñas*, the Court of Appeal held that "the assessment provisions of Government Code section 70373 and . . . section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair[, and] imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process . . . ." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.)  The court reversed the order imposing the assessments, and directed the trial court to stay the execution of the restitution fine "unless and until the People prove that [the defendant] has the present ability to pay it."  (*Id.* at pp. 1172–1173.)

In *Kopp*, *supra*, 38 Cal.App.5th at page 95, the Court of Appeal agreed "to some extent, with the . . . conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments . . . , *if the defendant requests such a hearing*." (Italics added.)  However, *Kopp* did not wholly endorse *Dueñas*, determining that appellants have the burden of making a record below as to their ability

8

to pay assessments, and that restitution fines should be challenged as excessive fines, not as due process violations. (*Kopp,* at p. 96.)

Here, the court imposed a restitution fine of $330 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a conviction assessment of $30 (Gov. Code, § 70373). Gales recognizes that his defense counsel did not object or request an ability-to-pay hearing. Nevertheless, he claims the issue is not forfeited because his challenge is "to a legal error at sentencing, not a discretionary choice," and an objection would have been futile because he was sentenced before the *Dueñas* and *Kopp* decisions.

The Attorney General responds that the challenge is forfeited. In his reply brief, Gales does not address the Attorney General's contentions. On the question of forfeiture, we agree with the Attorney General.

Section 1202.4, subdivision (b)(1) provides for a restitution fine in the minimum amount of $300, and up to a maximum amount of $10,000, when a defendant is convicted of a felony. Section 1202.4, subdivision (c) specifies, "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine . . . ." Thus, the statute requires the trial court to impose the statutory minimum regardless of the defendant's ability to pay, but the court may consider ability to pay in setting a fine in excess of the statutory minimum. (*People v. Kramis* (2012) 209 Cal.App.4th 346, 350.)

In *People v. Frandsen* (2019) 33 Cal.App.5th 1126 (*Frandsen*), the Court of Appeal rejected a *Dueñas* claim on the ground of forfeiture in a case in which the trial court imposed a $10,000 restitution fine. (*Frandsen,* at

9

p. 1153.) The court determined the question of a defendant's alleged inability to pay is factual, not legal, and the court reasoned that an objection to that amount would not have been futile under the law that existed at the time, because ability to pay was a factor that could have been considered in setting the fine in excess of the minimum.[3] (*Id.* at pp. 1153–1154.)

Similarly, in *People v. Gutierrez* (2019) 35 Cal.App.5th 1027 (*Gutierrez*), the trial court imposed a $10,000 restitution fine along with fees and assessments totaling almost $1,300. (*Id.* at pp. 1030–1031.) The Court of Appeal held that the defendant, sentenced prior to *Dueñas*, had forfeited his ability-to-pay claim by failing to raise the issue below. (*Gutierrez*, at pp. 1029–1030.) As explained by the court, even before *Dueñas*, section 1202.4 permitted the trial court to consider a defendant's ability to pay when it imposed a fine above the statutory minimum, "defendant had every incentive to object to imposition of a maximum restitution fine based on inability to pay," and the usual rules of forfeiture applied. (*Gutierrez,* at p. 1033; *People v. Avila* (2009) 46 Cal.4th 680, 729 [defendant forfeited challenge to restitution fine greater than the minimum by failing to raise the argument below].) Regarding the assessments, the *Gutierrez* court concluded the defendant's challenge to those amounts was also forfeited because, as "a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees." (*Gutierrez*, at p. 1033.)

---

[3] The court in *Frandsen* also disagreed with the defendant's assertion that *Dueñas* constituted " 'a dramatic and unforeseen change in the law.' " (*Frandsen, supra*, 33 Cal.App.5th at p. 1154; but see *People v. Santos* (2019) 38 Cal.App.5th 923, 932; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1034.)

The same reasoning applies here.  The trial court imposed a restitution fine greater than the statutory minimum of $300, and, as a result, Gales had the right, even before *Dueñas*, to request an ability-to-pay hearing. (*Gutierrez*, *supra*, 35 Cal.App.5th at p. 1033.)  Because Gales failed to challenge his ability to pay the restitution fine of $330, Gales "surely would not complain on similar grounds" as to the requirement that he pay an additional $70 in assessments.  (*Ibid.*; *Frandsen*, *supra*, 33 Cal.App.5th at p. 1154 ["Given [defendant's] failure to object to a $10,000 restitution fine based on inability to pay, [defendant] has not shown a basis to vacate assessments totaling $120 for inability to pay."].)  We conclude Gales's challenge to the restitution fine and the assessments is forfeited on appeal.

Even if Gales did not forfeit his challenge to either the $330 restitution fine or the $70 in assessments, any error in denying Gales a hearing on his ability to pay was harmless beyond a reasonable doubt.  (*Chapman v. Cal.*, *supra*, 386 U.S. at p. 24.)  The inquiry into a defendant's ability to pay assessments and fines includes consideration of future earning capacity and the ability to earn prison wages.  (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; *People v. Jones, supra*, 36 Cal.App.5th at p. 1035; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139.)

Here, the probation report indicates Gales was only 27 years old at the time of his conviction.  Although he suffered a gunshot wound when he was 13, he made a full recovery.  Gales graduated from high school in Minnesota in 2014, and "worked in customer service at a cable company" when he moved to California.  While Gales has an extensive criminal history dating back to 2009, there is no indication Gales suffers any substance abuse issues.  Even without considering wages Gales may earn in prison, there is no reason to doubt he will be able to pay $400 in fines and fees.  (*People v. Johnson*, *supra*,

11

35 Cal.App.5th at pp. 139–140 [any error in imposing $370 in fines and fees harmless beyond a reasonable doubt]; *People v. Jones, supra,* 36 Cal.App.5th at p. 1035 [same].)

## DISPOSITION

The judgment is affirmed.

_____

Jones, P. J.

WE CONCUR:


_____

Needham, J.


_____

Burns, J.


A156362